UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JUSTIN SAVAGE and SHAWNA MORSE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF MAINE, MAINE STATE POLICE, COLONEL WILLIAM G. ROSS, TROOPER JAMIE FENDERSON, SERGEANT ADAM SCHMIDT, and DETECTIVE ANNA RITLAND,<br><br>Defendants. | Case No. 2:25-cv-00476-SDN |

**MOTION TO DISMISS**

Defendants State of Maine, Maine State Police (MSP), Colonel William G. Ross, Trooper Jamie Fenderson, Sergeant Adam Schmidt, and Detective Anna Ritland, by and through counsel, hereby move to dismiss certain claims in Plaintiffs' First Amended Complaint, ECF No. 4, as stated herein.

First, the Court should dismiss all claims against the State of Maine and MSP because they are barred by sovereign immunity or otherwise assert causes of action that cannot be sustained against either Defendant.  Second, the Court should dismiss Count XIII against all Defendants because it is not a valid cause of action and otherwise duplicative of other claims.  Third, the Court should dismiss all Section 1983 and Maine Civil Rights Act claims that are grounded in defamation or to the extent they seek recovery for reputational harm.

1

## FACTUAL BACKGROUND

On March 16, 2024, a neighbor called to report that Justin Savage had assaulted his girlfriend Shawna Morse in front of their home in Limerick.  Amd. Compl. at 40.  Trooper Jamie Fenderson, Sergeant Adam Schmidt, and Detective Anna Ritland responded to the neighbor's complaint.  Amd. Compl. ¶¶ 15-16.  After several minutes, Savage was arrested.  Amd. Compl. ¶ 18.  Savage alleges that during the course of his arrest, he was subject to excessive force and the arresting officers ignored his medical needs.  Amd. Comp. ¶¶ 18-26.  Both Savage and Morse allege that they were wrongfully arrested and maliciously prosecuted.  Amd. Compl. ¶¶ 88-95, 144-53.  They also assert that Defendants falsified official reports, spoliated evidence, and defamed the Plaintiffs.  Amd. Compl. ¶¶ 26, 29, 31-35.

Plaintiffs initiated this case on September 18, 2025.  ECF No. 1.  On October 22, 2025, Plaintiffs filed a First Amended Compliant as of right.  ECF No. 4.  The First Amended Complaint alleges a bevy of federal and state-law claims against the Defendants delineated into fourteen counts that assert various violations under the Maine Tort Claims Act (MTCA), 14 M.R.S.A. §§ 8101-8118 (2003 & Supp. 2025), the Maine Civil Rights Act (MCRA), 5 M.R.S.A. §§ 4681-85 (2013 & Supp. 2025); and Section 1983, 42 U.S.C.A. § 1983 (Westlaw through Pub. L. No. 119-36).  Through this targeted motion, Defendants seek to dismiss only the claims brought against the State and MSP and certain other clearly non-actionable claims.

## STANDARD OF REVIEW

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom.  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  A complaint fails to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Plausible means "something more than merely possible or merely consistent with a defendant's liability." *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (cleaned up); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011).

## ARGUMENT

I.  **All Section 1983 claims and MCRA claims against the State and MSP should be dismissed because neither statute permits suits or claims against the State or its agencies.**

Plaintiffs have sued the State and MSP under Section 1983 and the MCRA seeking compensatory damages and punitive damages. Amd. Compl. at 32-34. Because neither the State nor MSP can be sued under Section 1983 or the MCRA, Counts V, VI, VII, VIII, and X and applicable portions of Counts IX, XI, XII, XIII, and XIV, must be dismissed against the State and MSP.

Section 1983 states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C.A. § 1983. The Supreme Court has held that a State is not a "person," and a State is therefore not subject to Section 1983 liability. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). As explained by the Supreme Court: "in common usage, the term person does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it." *Id.*

3

(cleaned up). Because the State is not a person, all Section 1983 claims against it must be dismissed.

Likewise, a state agency that is an arm of the state also is not a "person" within the meaning of Section 1983. *Wilson v. Brown*, 889 F.2d 1195, 1197 (1st Cir. 1989); *accord Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court.").

MSP is an arm of the State that is not subject to suit under Section 1983. *Parent v. U.S. Customs & Border Prot.*, No. 1:11-CV-295-GZS, 2012 WL 2567141, at *7 (D. Me. July 2, 2012) ("Maine State Police are an arm of the state government"). MSP is a bureau within the Maine Department of Public Safety, *see* 25 M.R.S.A. § 2902(1) (2023), and, among other responsibilities, is tasked with "patrol[ling] the state highways and other important ways, especially outside the compact portion of cities and towns, for the purpose of enforcing the law, and all laws relating to motor-driven and horse-drawn vehicles and all rules and regulations in regard thereto, and of arresting all violators and prosecuting all offenders against the same." 25 M.R.S.A. § 1502 (2023). MSP is not independent from the State, but "is an entity or sub-unit of the State of Maine." Amd. Compl. ¶ 5. As a state agency, MSP cannot be sued under Section 1983. *Carter v. Maine State Police*, No. 1:24-CV-00187-SDN, 2025 WL 755405, at *2 (D. Me. Mar. 10, 2025) (dismissing claims against MSP because "Maine's retained sovereign immunity covers the MSP, which is an arm of the state government"); *Andrews v. Dep't of Envtl. Prot.*, 1998 ME 198, ¶ 10, 716 A.2d 212 ("a state agency, is not a 'person' pursuant to section 1983").

Similarly, the MCRA claims against the State and MSP fail to state a claim because neither the State nor a state agency is a "person" under the MCRA. The MCRA provides a private cause

of action for violations of constitutional rights by "any person." *See* 5 M.R.S.A. § 4682(1-A). The MCRA "was patterned after 42 U.S.C. § 1983," *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994) (quotation marks omitted), and the MCRA's protections and immunities are generally "coextensive with those afforded by 42 U.S.C. § 1983," *Est. of Bennett v. Wainwright*, 548 F.3d 155, 178–79 (1st Cir. 2008). Because the State is not a "person" under section § 1983, the state and its agencies are also not persons under the MCRA. *Jenness*, 637 A.2d at 1158 ("the State is not a 'person' within the scope of the [MCRA]"); *Grendell v. Maine*, No. 1:19-CV-00419-JDL, 2020 WL 3895765, at *8 (D. Me. July 10, 2020) (dismissing § 1983 and MCRA claims brought against a state agency).

Because the State and MSP cannot be sued under Section 1983 or the MCRA, those claims against the State and MSP in Counts V, VI, VII, VIII, and X and applicable portions of Counts IX, XI, XII, XIII, and XIV must be dismissed.

**II.     All tort claims brought against the State and MSP should be dismissed because they are barred by the State's sovereign immunity.**

The Maine Legislature "enacted the Maine Tort Claims Act as a comprehensive measure to define the standard of liability under state law for governmental entities and employees" for tort claims. *Gerber v. Ward*, No. 1:23-CV-00319-NT, 2023 WL 8455081, at *1 (D. Me. Dec. 6, 2023) (quoting *Jackson v. Inhabitants of Town of Sanford*, No. 94-12-P-H, 1994 WL 589617, at *2 n.2 (D. Me. Sept. 23, 1994)). The MTCA provides that "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter." 14 M.R.S.A. § 8103(1). Under the MTCA, a governmental entity is defined to include the State "or any office, department, agency, authority,

commission, board, institution, hospital or other instrumentality of the State." 14 M.R.S.A. § 8102(4). Therefore, both the State and MSP are governmental entities as defined in the MTCA.

Section 8104-A lists four specific carveouts to a governmental entity's sovereign immunity for tort claims:

> Except as specified in section 8104-B, a governmental entity is liable for property damage, bodily injury or death in the following instances.
>
>    **1.   Ownership; maintenance or use of vehicles, machinery and equipment.** . . .
>
>        . . . .
>
>    **2. Public buildings.**  A governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appearance of any public building.
>
>        . . . .
>
>    **3. Discharge of pollutants.**
>
>        . . . .
>
>    **4. Road construction, street cleaning or repair.** . . .

14 M.R.S.A. § 8104-A. These exceptions to governmental immunity are strictly construed. *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674; *Brooks v. Augusta Mental Health Inst.*, 606 A.2d 789, 790 (Me. 1992).

Here, none of the allegations in Plaintiffs' Amended Complaint implicate public buildings, discharge of pollutants, or road construction, street cleaning, or repair. *See generally* Amd. Compl. Plaintiffs' allegations include reference to a police vehicle, *see e.g.*, Amend. Compl. ¶¶ 20-22, but the Court should conclude these bare references to events that occurred in or near a police vehicle do not fall within the motor vehicle exception to governmental immunity.

First, the gravamen of Plaintiffs' allegations against the State and MSP in their tort claims

6

(Counts IX, XI, XII, XIII, and XIV) are that: the State and MSP failed to adequately supervise and discipline its employees for their allegedly unlawful conduct towards Plaintiffs (Count IX); the State and MSP arrested Plaintiffs without probable cause (Count XI); the State and MSP pursued a malicious prosecution of Plaintiffs (Count XII); the State and MSP spoliated and falsified evidence (Count XIII); and the State and MSP published false statements about the Plaintiffs (Count XIV). None of these allegations involve the "ownership," "maintenance," or "use" of a motor vehicle, 14 M.R.S.A. § 8104-A(1), nor is a vehicle ever mentioned in these counts. *See, e.g.*, *Gilbert v. Me. Dep't of Health & Human Servs.*, No. 2:24-CV-00372-JAW, 2025 WL 953711, at *9 (D. Me. Mar. 31, 2025) (dismissing MTCA claim when the conduct alleged did not implicate any enumerated exception to governmental immunity).

Second, "the mere fact that a vehicle or piece of equipment or machinery is involved in the conduct that allegedly caused harm does not, in itself, implicate the exception to immunity" in section 8104-A(1). *Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 9, 145 A.3d 1030. Instead, "the kind of negligence falling within the exception to immunity provided in section 8104-A(1) involves harms that flow naturally or directly from the negligent use or maintenance of vehicles." *Thompson*, 2002 ME 78, ¶ 7, 796 A.2d 674.

For example, in *Brooks* a patient "died as a result of injuries received" after she jumped out the door "of a moving bus while part of a group of patients on an outing to Augusta under the supervision of the three AMHI employees." 606 A.2d at 790. In a subsequent wrongful death action, the claimant argued that the motor vehicle exception applied to permit the suit against the State and AMHI. *Id.* The Law Court disagreed because "the gravamen of her claim is not the defendants' negligent operation, use or maintenance of the bus, but the monitoring and supervision of the decedent by the AMHI employees while the decedent was riding on the bus." *Id.*

Similarly, *Thompson* held that delay in rescue because of inadequate and incompatible helicopter equipment and insufficient fuel was not the type of conduct that fell within the vehicle exception to governmental immunity. 2002 ME ¶¶ 2, 9, 796 A.2d 674. The Court reasoned that the conduct challenged were not risks that of harm that flowed "naturally or directly" from a "vehicle's contact with the general public." *Id.* at ¶ 8. In other words, "[t]he major risk from the negligent use of vehicles with the power to move is that they will be driven or transported in locations where the general public is exposed to the possibility of a collision and resulting harm." *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 9, 728 A.2d 673.

Here, Plaintiffs do not allege that they suffered any harm that results from the natural use of a vehicle. Instead, they allege they were subjected to physical assault and other allegedly unlawful conduct by another person in or near a motor vehicle. Amd. Compl. ¶¶ 20-22. Construed narrowly, such conduct does not fall within the scope of the statutory motor vehicle exception to governmental immunity. *See Day's Auto Body*, 2016 ME 121, ¶ 145 A.3d 1030 (affirming summary judgment in favor of municipality for tort claim that alleged "the Town made imprudent tactical decisions in the course of fighting [a] fire" because although the Town used a fire truck in fighting the fire, the risk of fire was not "the type of risk for which the Legislature intended governmental entities to incur tort liability" via section 8104-A(1)). Accordingly, the tort claims against the State and MSP must be dismissed as barred by the State's retained sovereign immunity. 14 M.R.S.A. §§ 8103, 8118.

### III. Plaintiffs' spoliation claim should be dismissed because it is not an independent cause of action.

Count XIII asserts a claim for "spoliation of evidence." Amd. Compl. ¶¶ 154-158. This claim apparently arises out of the allegation that Defendants destroyed or disposed of Defendant

Fenderson's special duty glove and the spit mask that covered Savage's face during his arrest. *Id.* ¶ 156.[1]

Maine's Law Court has never recognized a cause of action for tortious spoliation of evidence. *Gagne v. D.E. Jonsen, Inc.*, 298 F. Supp. 2d 145, 147 (D. Me. 2003); *Breen v. Lucas*, 2005 WL 2736540, at *7 (Me. Super. July 4, 2005); *Butler v. Mooers*, 2001 WL 1708836, at *1 (Me. Super. June 13, 2001). The Massachusetts Supreme Judicial Court expressly refused to recognize a spoliation cause of action. *Fletcher v. Dorchester Mut. Ins. Co.*, 773 N.E.2d 420, 427–28 (Mass. 2002).

This Court should decline to create a new cause of action that Maine courts have not seen fit to recognize. Moreover, in jurisdictions that have recognized the tort, one of the elements is that the destruction of evidence prejudiced the plaintiff's case. *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993); *Hannah v. Heeter*, 584 S.E.2d 560, 573 (W. Va. 2003); *see also Malinowski v. Documented Vehicle/drivers Sys., Inc.*, 66 F. App'x 216, 222 (1st Cir. 2003) ("In the few states that recognize an independent tort for spoliation of evidence, courts have required, inter alia, that a party show a causal relationship between the act of spoliation and the inability of the complainant to prove her lawsuit."). Here, there is no allegation that the destruction or disposal of evidence prejudices Plaintiffs or prevents them from proving their case.

Further, spoliation as a doctrine is intended "to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence." *Driggin v. Am. Sec. Alarm Co.*, 141 F. Supp. 2d 113, 120 (D. Me. 2000) (citation and internal quotation marks omitted). The remedy for spoliation of evidence is sanctions, including "dismissal of the case, the exclusion of

---

[1] The remainder of the allegations in this paragraph are duplicative of the allegations in Counts V, IX, XII, XIV, and XV.

evidence, or a jury instruction on the spoliation inference." *Id.* (citation and internal quotation marks omitted). Thus, spoliation is inconsistent "with the existence of an independent cause of action arising out of such deliberate conduct. Rather, the injured party may seek sanctions that will affect its claims or defenses." *Gagne*, 298 F. Supp. 2d at 147-48. Accordingly, Count XIII should be dismissed against all Defendants. *See Grendell v. Maine*, No. 1:19-CV-00419-JDL, 2020 WL 3895765, at *7 (D. Me. July 10, 2020) (dismissing a spoliation of evidence claim for failure to state a claim).

**IV.     Plaintiffs cannot pursue Section 1983 or MCRA claims for defamation or reputational harm.**

Count XIV asserts a defamation claim under Section 1983. Amd. Compl. ¶¶ 159-68. Plaintiffs also claim entitlement to relief for reputational harm pursuant to Section 1983 and the MCRA in Counts V, VII, VIII, XI, XII, and XIII. Amd. Compl. ¶¶ 78, 80, 84, 99-100, 105-06, 111, 147, 152, 157.

"It is beyond cavil that defamation, even from the lips of a government actor, does not in and of itself transgress constitutionally assured rights." *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 102 (1st Cir. 2002) (cleaned up). Accordingly, allegations of defamation are "not cognizable under the Constitution and thus fail[] to state an actionable cause under 42 U.S.C. § 1983." *Pasdon v. City of Peabody*, 417 F.3d 225, 228 (1st Cir. 2005). That is because a person's "interest in reputation . . . is not a 'liberty' or 'property' concern which is guaranteed against spoliation by state action." *Id* (quoting *Paul v. Davis*, 424 U.S. 693, 708 (1976)). *Pasdon v. City of Peabody*, 417 F.3d 225, 228 (1st Cir. 2005). The only way for "reputational harm or stigma" to be "actionable under § 1983" is not applicable here because Plaintiffs have not alleged they suffered an "adverse effect" on their "legal status, such as employment discharge or demotion, as

10

a result of the allegedly defamatory statements." *Id.* at 229. Because such harms are not actionable under Section 1983 or the MCRA, *see supra* at 4-5, they should be dismissed.[2]

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant their motion and dismiss: 1) all claims against the State and MSP; 2) Count XIII against all Defendants; and 3) Counts V, VII, VIII, XI, XII, XIII, and XIV to the extent they assert Section 1983 and MCRA claims grounded in defamation or seek recovery for reputational harm.

DATED:  January 9, 2026                    Respectfully submitted,

                                           AARON M. FREY
                                           Attorney General, State of Maine

                                           /s/ Kimberly L. Patwardhan
                                           KIMBERLY L. PATWARDHAN
                                           Assistant Attorney General

                                           Office of the Maine Attorney General
                                           6 State House Station
                                           Augusta ME  04333-0006
                                           Tel.  (207) 626-8570
                                           Fax (207) 287-3145
                                           kimberly.patwardhan@maine.gov

                                           *Attorney for Defendants*

---

[2] Defendants do not seek dismissal of Count XIV under the MTCA as to Defendants Fenderson, Schmidt, and Ritland.

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically filed this document and any attachments with the Clerk of the Court using the CM/ECF system, and that the same will be sent electronically to registered participants as identified in the CM/ECF electronic filing system for this matter.

DATED: January 9, 2026                /s/ Kimberly L. Patwardhan
                                      KIMBERLY L. PATWARDHAN
                                      Assistant Attorney General
                                      Office of the Attorney General
                                      6 State House Station
                                      Augusta ME  04333-0006
                                      Tel.  (207) 626-8570
                                      Fax (207) 287-3145
                                      kimberly.patwardhan@maine.gov