UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **JUSTIN SAVAGE** and **SHAWNA MORSE**,<br><br>                Plaintiffs,<br><br>v.<br><br>**STATE OF MAINE, MAINE STATE POLICE, COLONEL WILLIAM G. ROSS, TROOPER JAMIE FENDERSON (#1413), SERGEANT ADAM SCHMIDT (#8991),**<br>and **DETECTIVE ANNA RITLAND (#9283)**,<br>                Defendants. | Docket No. 2:25-cv-00476-SDN |

**PLAINTIFFS' OBJECTION TO DEFENDANTS' PARTIAL MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

**FACTUAL BACKGROUND**

On March 16, 2024, Plaintiffs had not engaged in any criminal conduct, however, Defendants Fenderson, Schmidt, and Ritland, acting under the color of law and on behalf of the Maine State Police, arrived at their home and proceeded to unjustifiably and unreasonably cause and escalate a conflict with the Plaintiffs. Compl.[1] ¶¶ 16-18. The conflict culminated with the brutal beating of Justin Savage who, while handcuffed, was body slammed head first into the ground, mounted, otherwise restrained, and punched in the face over and over again while fearing for his life and pleading for help. Compl. ¶¶ 19-24. Shawna Morse, Justin's long-time partner, was detained and made to watch the beating in desperation, also pleading for help for Justin, and while suffering extreme, severe, and lasting emotional injuries of her own. Compl. ¶ 24.

---

[1] The Complaint in this case was amended once, as a matter of right, on October 22, 2025. All references to the complaint herein are, therefore, to the Amended Complaint.

1

Both Justin and Shawna were subsequently arrested, wrongfully, and charged with crimes absent probable cause. Compl. ¶¶ 27-28. Defendants then intentionally and in bad faith, concealed, destroyed, or otherwise spoliated physical evidence including, but not limited to: a blood-soaked mask worn by Justin during the beating, and a special duty glove worn by Defendant Fenderson as he punched Justin in the face, repeatedly. Compl. ¶ 29. Considering that Defendants wrongfully charged Justin with assault based on an allegation that he bit Defendant Fenderson in the hand, the glove itself constituted particularly powerful exculpatory evidence. *Id*.

Further, Defendants went on to intentionally, falsely, and in bad faith, publish on the internet and to media outlets the defamatory narrative that Justin was guilty of domestic violence against Shawna, that Justin had assaulted Defendant Fenderson, and that Shawna used force and resisted arrest or obstructed official police business. Compl. ¶¶ 31-35. The charges against both Justin and Shawna were rightfully dismissed in early 2025. Compl. ¶¶ 36-37.

The Amended Complaint plainly supports claims that "Defendants intentionally and in bad faith falsified, manufactured, and spoliated their official reports and evidence, and manufactured criminal charges, and defamed Plaintiffs, in an intentional and bad faith concerted effort to conceal and cover-up their unlawful, intentional, bad faith, excessive, and violent beating of Justin on March 16, 2024." Compl. ¶ 35. That is what is claimed because that is what happened. As such, the Complaint, as amended, plainly contains the sort of detailed factual allegations that require this Honorable Court to either deny the portions of Defendants' Motion to Dismiss concerning claims for spoliation and defamation, and/or to certify the question regarding the viability of a spoliation claim to the Maine Supreme Judicial Court.

## STANDARD OF REVIEW

According to the United States Supreme Court, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). "The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted. Fed.R.Civ.P. 12(b)(6)." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 7 (1st Cir. 2011).

"To survive a Rule 12(b)(6) motion to dismiss the plaintiff must plead "sufficient facts to show that he has a plausible entitlement to relief." *Khaqan v. Town of Bucksport*, 1:23-cv-00162-JAW, 2024 WL 691445, at *7 (D. Me. Feb. 20, 2024) (quoting *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 41 (1st Cir. 2009)). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gilbert v. Maine Dep't of Health and Human Serv.s*, 778 F.Supp.3d 239, 252 (D. Me. 2025) (quotation omitted).

## ARGUMENT

**I.     Section 1983 and Tort Claims Brought Against Maine and Maine State Police.**

A State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 618 (2002).[2] A state may waive its expansive Eleventh Amendment immunity in any of the following ways: (1) by

---

[2] The Maine State Police, being an "arm of the State of Maine" is a governmental entity likewise protected by Eleventh Amendment Immunity "unless the State has done something to waive it." *Ross v. Polky*, No. 2:24-cv-00057-LEW, at *2, 2024 WL 4544682 (D. Me. Oct. 22, 2024).

declaring that it intends to submit itself to the jurisdiction of a federal court, (2) by consent to or participation in a federal program for which waiver of immunity is an express condition, or (3) by affirmative conduct in litigation. *Ross v. Polky*, No. 2:24-cv-00057-LEW, at *2, 2024 WL 4544682 (D. Me. Oct. 22, 2024). A state's voluntary appearance in federal court amounts to a waiver of its Eleventh Amendment immunity. *Id*. (citing *Clark v. Barnard,* 108 U.S. 436, 447 (1883)).

Plaintiffs do not argue that Maine or the Maine State Police have, thus far, consented to being sued. Plaintiffs, however, will be pursuing the process by which consent may be obtained. Plaintiffs, therefore, request that the Court dismiss their claims against Maine and the Maine State Police *without prejudice,* so that the claims may be refiled in the event Maine and/or the Maine State Police provide consent.

## II.     Spoliation Claim.

The Maine Law Court has not yet recognized a cause of action for spoliation of evidence. *See Gagne v. D.E. Jonsen, Inc.*, 298 F.Supp.2d 145, 147 (D. Me. 2003). Spoliation, as a doctrine, is intended "to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence." *Id*. (quoting *Driggin v. American Sec. Alarm Co.,* 141 F.Supp.2d 113, 120 (D.Me.2000)). "When faced with potentially outcome-determinative questions of Maine law for which "there is no clear controlling precedent in the decisions of the Supreme Judicial Court," a federal court may certify those questions to the Law Court for instructions on how to rule." *Mundell v. Acadia Hosp. Corp.*, 92 F.4th 1, 6 91st Cir. (2024) (quoting Me. R. App. P. 25) (quotation marks removed).

Here, the Maine Law Court has not definitively ruled on the availability of an independent tort for spoliation and Plaintiffs would be remiss if they did not ask this Honorable Court to either hold

that the Maine Law Court, if presented with the facts of this case, would likely recognize an independent cause of action, or to certify a question to the Maine Law Court for its determination on this outcome-determinative issue.

The doctrine of spoliation, as discussed in *Gagne,* arises during a case in which the complained-of evidence has been lost or destroyed, and is rectified by sanctions, occasionally dismissal. *Id*. However, after the conclusion of a case, such deliberate and offensive conduct as to give rise to a need to deter future conduct and compensate the aggrieved party does constitute a separate cause of action in many jurisdictions. Otherwise, an injured party who has been aggrieved by the loss of exculpatory and inflammatory evidence, such as the blood-soaked mask he wore while being repeatedly punched in the face while he was restrained, has no redress once a case has been dismissed and the option to pursue sanctions has, therefore, passed through no fault of his or her own. As is the case here, lost or destroyed evidence in a criminal case may also be powerful evidence in a separate civil action, had it not been maliciously lost or destroyed.

California was the first state to recognize a tort of spoliation over thirty (30) years ago. *See Williams v. State of California*, 192 Cal. Rptr. 233 (Cal. 1983); *see also Smith v. Superior Ct.*, 151 Cal.App.3d 491(Cal. 1984). In *Smith* the court poignantly quoted Prosser: "New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where none had been recognized before." *Id*. at 496-96. Though *Williams* and *Smith*, a decision of the Second District Court of Appeals in California, was overturned by the California Supreme Court in *Cedars-Sinai Medical Center v. Superior Court*, nearly fifteen years later, its

rationale has been adopted by multiple jurisdictions and contains strong persuasive language supporting an independent cause of action for intentional spoliation. 954 P.2d 511 (Cal. 1998).[3]

Further, *Cedars-Sinai* is inapposite here, because that case involved the addition of a claim for intentional spoliation to the underlying case in which evidence was spoliated. *Id.* Here, the criminal cases against Justin and Shawna have concluded with dismissals, and there is no remedy available to them in the underlying case for the egregious acts of destroying evidence which could be otherwise useful to them in this separate action.

The Maine Law Court has not expressly ruled on the issue, but there is reason to believe that, given the circumstance of this case and the lack of adequate remedies available to Plaintiffs considering the dismissal of the criminal case in which evidence was spoliated, that it would recognize an independent tort in order to provide Plaintiffs relief and deter future bad faith conduct. In *Nation-Wide Check Corp. v. Forest Hilld Distributors, Inc*, 692 F.2d 214, 218 (1st Cir. 1982), there was no requests for recognition of a separate tort, but the First Circuit Court of Appeals acknowledged the need for a negative inference in the underlying case upon spoliation in order to impose "prophylactic and punitive effects" on the offending party. The need for sanctions must extend beyond the existing litigation in which evidence was spoliated, otherwise the action is left unremedied when the case ends. Both Federal and Maine courts recognize the need for severe, sometime extreme remedies in the case of spoliated evidence in order to deter and punish. *See*

---

[3] *See* Alabama (Vesta Fire Ins. Co. v. Milam & Co. Constr., Inc., 901 So.2d 84, 93 (Ala. 2004)), Alaska.(Hazen v. Anchorage, 71 P.2d 456 (Alaska 1986), Florida (Townsend v. Conshor, Inc., 832 So.2d 166, 167 (Fla. Dist. Ct. App. 2002); Jost v. Lakeland Reg'l Med. Ctr., Inc., 844 So.2d 656 (Fla. 2d DCA 2003), Indiana Glotzbach, CPA v. Froman, 827 N.E.2d 105, 108 (Ind. App. 2005), Kansas (Koplin v. Rosel Well Perforators, Inc., 241 Kan. 206, 734 P.2d 1177 (Kan. 1987), Louisiana (Pham v. Contico Intern., Inc., 759 So.2d 880 (La. App. 2000)), Montana (Gentry v. Douglas Hereford Ranch, Inc., 1998 Mont. 182, 290 Mont. 126, 962 P.2d 1205 (Mont. 1998); Oliver v. Stimson Lumber Co., 297 Mont. 336, 345- 354, 993 P.2d 11, 18-23 (Mont. 1999), New Mexico (Coleman v. Eddy Potash, Inc., 120 N.M. 645, 649, 905 P.2d 185, 189 (N.M. 1995)), OhioSmith v. Howard Johnson Co., Inc., 67 Ohio St.3d 28, 29, 615 N.E2d 1037 (Ohio 1993)), and West Virginia (Hannah v. Heeter, 584 S.E.2d 560, 563-64 (W. Va. 2003)) have all explicitly recognized some form of an independent tort for spoliation.

*M.R. Civ. P. 37; F.R. Civ. P. 37; Driggin v Am. Sec. Alarm Co.*, 141 F.supp.2d 113, 120 (D. Me. 2000) ("the goals of the spoliation doctrine are to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence.")(quotation marks and citations omitted).

Although Defendants state correctly that "Maine's Law Court has never recognized a cause of action for tortious spoliation of evidence," Mot. at 9, they support the contention with only citations to a case from the District of Maine, and two Maine Superior Court cases. *See Gagne*, 298 F. Supp. at 147; *Breen v. Lucas*, 2005 WL 2736540, at *7 (Me. Super. July 4, 2005); *Butler v. Mooers*, 2001 WL 1708836, at *1 (Me. Super. Ct. June 13, 2001) (decided on other grounds: "Even if the Law Court were to recognize spoliation of evidence as an independent tort, however, the Plaintiff is estopped from alleging that any damages were caused by the alleged destruction of evidence."). That's because Maine's Law Court has never disavowed, rejected, or otherwise spoken on the need for an independent tort of spoliation at all. There's as much reason to believe, given the weight of emerging jurisdiction who recognize some form of an independent tort for spoliation and the unique circumstances of this case, that the Maine Law Court would recognize the cause of action.

Defendants argue, without merit, that "in jurisdictions that have recognized the tort, one of the elements is that the destruction of evidence prejudiced the plaintiff's case" and that "[h]ere there is no allegation that the destruction or disposal of evidence prejudices Plaintiffs or prevent them from proving their case." To the contrary, here Plaintiffs sufficiently allege that, because the glove and mask are lost or destroyed and the official reports otherwise spoliated, Plaintiffs are prejudices in their claims for assault, battery, IIED, unlawful arrest, wrongful prosecution, and excessive force. For example, an intact duty glove would buttress Plaintiff's claim that he never bit Defendant Fenderson, and that the Defendants, collectively, lied about him allegedly doing so.

Further, the blood-soaked mask placed over Justin's nose and mouth during and after his beating as he struggled to breath amid serious injuries which compromised his airway with excessive amounts of his own blood and swelling, would be powerful evidence of the unreasonableness of Defendants' actions on March 16, 2024.

Should the Court deny Plaintiff's request(s) and dismiss the claim for intentional spoliation, the outcome could be judicially inefficient and financially costly to all parties. In that event, the surviving claims would move forward separate from the spoliation claims and, should the First Circuit or the Maine Law Court later agree with Plaintiffs that spoliation is a recognizable tort, the parties would then be required to go back to the beginning, reconduct discovery and depositions, and have a second trial. Alternatively, should the First Circuit or the Maine Law Court later agree with Defendants that spoliation is not a recognized tort, the spoliation claim can easily and efficiently be dismissed at that time with the parties having only incurred minimal additional cost processing the spoliation claims concurrently with the other claims.

Sanctions are unavailable to the Plaintiffs because evidence was spoliated in the underlying criminal cases against them, which have concluded with dismissals. As such, this Honorable Court should either rule that Maine's Law Court would likely recognize an independent tort for spoliation of evidence or certify the question to the Maine Law Court for clarification on an unsettled question of state law.

### III. Section 1983 or MCRA Claims for Defamation or Reputational Harm.

The Supreme Court has determined that defamation of an individual, even by a government actor, does not *in and of itself* transgress constitutionally assured rights. *Paul v. Davis,* 424 U.S. 693, 700-01 (1976); *Pendleton v. City of Haverill*, 156 F.3d 57, 62-63 (1st Cir. 1998). That is not to say that there are not circumstances in which defamation of an individual by a governmental

8

officer is actionable under both § 1983 and the MTCA, for certain there are. "For a reputational harm or stigma to be actionable under § 1983, the utterance must be coupled with a loss of or adverse effect on a person's legal status." *Pasdon v. City of Peabody*, 417 F.3d 225, 229 (1st Cir. 2005). Changes to employment status such as discharge or demotion are but examples of adverse effects. *Id*. (using the phrase "such as" to introduce the two as examples).

Defendants argue that allegations of defamation are not actionable under §1983 because a person's interest in in their reputation does not concern "liberty" or "property" interest guaranteed against spoliation *by state action*. First, the individual state actors being sued in their personal capacity, do not enjoy sovereign immunity for §1983 claims and so claims against them for harm resulting from their defamatory and libelous statements must survive a Rule 12(b)(6) motion to dismiss. Claims against the individual defendants under the MTCA similarly must survive as state actors are not immune for any intentional act or omission within the course and scope of employment in which an employee's actions are found to have been in bad faith. 14 M.R.S.A. § 8111(1)(C); *Trafton v. Devlin*, 43 F.Supp.2d 56, 61 (D. Me. 1999).

Plaintiffs have alleged a plethora of real and demonstrable harms suffered by them as the result of Defendants' actions, including their defamation of the Plaintiffs. It is alleged that the Defendants acted intentionally and in bad faith, and that their actions caused Plaintiffs to suffer severe emotional distress and damages. Those damages are not limited to reputational harm alone. The Complaint notes that "Defendants' intentional and false publications are matters concerning fact, not opinion, portray Plaintiffs in a false, negative and disparaging light, are harmful to Plaintiffs in their communities and employment…." Compl. ¶ 161.

Plaintiff Justin Savage as a self-employed person, suffers a *per se* adverse effect on his legal status as an entrepreneur as the defamatory statements show up as results in every search for him

or his business on the internet. Justin has lost clients due to the defamatory statements. That is but an example of a harm and an adverse effect on his legal status. Likewise for Shawna, she was terminated from her employment at Century 21, due to her wrongful arrest and publication of defamatory statements about her shortly thereafter. These injuries are within the allegations of the Complaint and are sufficient to survive Defendants' Motion to Dismiss.

At this early pleadings stage, this Court should not dismiss Plaintiffs' claims for defamation and/or defamation *per se*. It is simply too early for the Court, as a matter of law, to hold that no set of facts exist which would entitle Plaintiffs to relief.

## CONCLUSION

Based on the forgoing, Plaintiffs respectfully request that this honorable Court deny Defendants' Motion to Dismiss with regards to Count XIII, and all claims seeking recovery based in whole or in part on Defendants' defamation of Plaintiffs and the resulting harms. Plaintiffs further await Defendant's, State of Maine and Maine State Police's, response to their request that they waive sovereign immunity in this case.

DATED at Portland, Maine, this 30th day of January 2026.

    Respectfully Submitted,
    Justin Savage and Shawna Morse,
    By counsel,

    */s/ Jeffrey Bennett, Esq.*
    _____
    Jeffrey Bennett, Esq. #7223
    Brooke J. Bailey, Esq. #6760
    Legal-Ease, LLC, P.A.
    Two City Center, 4th Floor
    Portland, ME 04101
    P: 207-805-0055
    F: 207-805-0099

## **CERTIFICATE OF SERVICE**

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date this objection was filed in the Court's ECF system, and that the ECF system will be sending a copy to all of the Defendants and/or their counsel of record.

Dates: January 30, 2026

*/s/ Jeffrey Bennett, Esq.*

_____

Jeffrey Bennett, Esq. #7223
Brooke J. Bailey, Esq. #6760
Legal-Ease, LLC, P.A.
Two City Center, 4th Floor
Portland, ME 04101
P: 207-805-0055
F: 207-805-0099