UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

JUSTIN SAVAGE, et al.,            )
                                  )
            Plaintiffs,           )
                                  )
v.                                )        2:25-cv-00476-SDN
                                  )
STATE OF MAINE,[1] et al.,        )
                                  )
            Defendants.           )

## ORDER ON MOTION TO DISMISS

This is a civil rights action stemming from the allegedly unlawful arrest of Plaintiffs Justin Savage and Shawna Morse on March 16, 2024. The arrest involved Maine State Police Defendants Trooper Jamie Fenderson, Sergeant Adam Schmidt, and Detective Anna Ritland. Their supervising officer, Colonel William G. Ross, is also named as a Defendant. Plaintiffs assert federal and state civil rights claims, as well as various tort claims, against the officers involved in their arrest and Defendant Ross in his supervisory capacity. In essence, Plaintiffs allege the officers unlawfully arrested them, used excessive force in effecting that unlawful arrest, and thereafter engaged in conduct constituting malicious prosecution, defamation, and other constitutional and tort violations.

Currently before the Court is Defendants' motion to dismiss two of Plaintiffs' counts in their entirety and portions of several others. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. ECF No. 16.

---

[1] On March 4, 2026, Plaintiffs voluntarily dismissed without prejudice their claims against the State of Maine and Maine State Police. ECF No. 19. Only Plaintiffs' claims against the following individual Defendants remain: Colonel William G. Ross, Trooper Jamie Fenderson, Sergeant Adam Schmidt, and Detective Anna Ritland (collectively, the "Defendants"). *Id.* Accordingly, Defendants' motion to dismiss the State of Maine and Maine State Police for lack of jurisdiction is **DENIED** as moot. ECF No. 16.

1

## FACTUAL BACKGROUND[2]

On March 16, 2024, Defendants Fenderson, Schmidt, and Ritland (collectively, the "Arresting Defendants") were present at Plaintiffs' residence. ECF No. 4 ¶¶ 15–16. Plaintiffs had not engaged in any criminal conduct and did not understand why the three officers were on their property. *Id*. ¶ 17. The encounter between the parties escalated, during which time Defendant Fenderson placed Mr. Savage in handcuffs. *Id*. ¶ 18. Several minutes after being handcuffed, Defendant Ritland informed Mr. Savage he was under arrest. *Id*. While Mr. Savage was still in handcuffs, Defendant Schmidt grabbed him from behind, lifted him into the air, and threw him headfirst onto the ground. *Id*. While Mr. Savage was still on the ground, Defendants Ritland and Fenderson "swarmed" on top of Mr. Savage, rending him immobile. *Id*. ¶ 19.

Defendants Ritland and Fenderson then placed a still-handcuffed Mr. Savage into a police vehicle. *Id*. ¶ 20. While placing Mr. Savage into the vehicle, Defendant Fenderson struck him in the face, drawing blood. *Id*. Also contemporaneously to placing Mr. Savage in the vehicle, Arresting Defendants narrated for their audio recorders that he was resisting, uncooperative, and spitting—narration that Plaintiffs allege a dash-camera recording contradicts. *Id*. Once Arresting Defendants situated Mr. Savage inside of the vehicle, they applied additional restraints to him, including a seatbelt, leg restraints, and

---

[2] The Court derives these facts from Plaintiffs' amended complaint, ECF No. 4, accepts them as true, and draws all reasonable inferences in the Plaintiffs' favor. *See Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). Plaintiffs ask the Court to consider "contemporaneous video recordings and audio recordings made on March 16, 2024, of the events occurring on that night," ECF No. 4 ¶ 13, but they do not direct the Court towards any specific recordings. Generally, on a motion to dismiss, the Court may only consider the complaint and documents attached thereto or expressly incorporated therein. *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020). Narrow exceptions exist for documents that are central to the plaintiff's claims or sufficiently referred to in the complaint, as well as for documents whose authenticity the parties do not dispute and official public records. *Newman v. Lehman Bros. Holdings*, 901 F.3d 19, 25 (1st Cir. 2018). Because Plaintiffs have not properly incorporated the audio and video recordings, the Court may not consider them in resolving the motion to dismiss.

a mask that covered his entire face. *Id*. While restrained inside of the vehicle, Mr. Savage experienced difficulty breathing due to the blood-soaked mask covering his face and/or an asthma-related medical emergency, and he repeatedly called for assistance. *Id*. ¶ 21. The Arresting Defendants—who stood immediately outside the vehicle, leaning against the adjacent door—did not come to his aid. *Id*. Fearing for his life, Mr. Savage unbuckled his seat belt and attempted to open the vehicle's door, at which point the Arresting Defendants pulled him from the vehicle and onto the ground. *Id*. ¶ 22.

While multiple of the Arresting Defendants physically subdued an already handcuffed, leg-restrained, and masked Mr. Savage on the ground, Defendant Fenderson "held [Mr. Savage's] head still with one hand and, with his other hand, repeatedly, violently, [and] excessively . . . punched and beat [his] face . . . between 11 and 13 times." *Id*. ¶¶ 22–23. Mr. Savage sustained significant facial injuries, including broken bones, that required reconstructive surgery and further caused "significant pain, suffering, disfigurement, and lasting and permanent internal injuries." *Id*. Plaintiffs allege Defendants Ritland and Schmidt failed to intervene to stop Defendant Fenderson's beating, just as Defendants Ritland and Fenderson had earlier failed to intervene to stop Defendant Schmidt from throwing Mr. Savage to the ground. *Id*. ¶ 25. Ms. Morse, whom the Arresting Defendants had likewise detained, witnessed the beating firsthand, causing her emotional distress and immediate fear for herself and Mr. Savage. *Id*. ¶ 24.

Plaintiffs further allege that the Arresting Defendants falsified official reports and audio recordings, manufactured criminal charges to conceal the beating, and destroyed or disposed of physical evidence—including the blood-soaked mask and a Special Duty Glove Defendant Fenderson wore during the encounter. *Id*. ¶¶ 29, 35. According to the amended complaint, the Arresting Defendants discussed charging Mr. Savage with

3

breaking Defendant Schmidt's ankle, even though Defendant Schmidt himself stated on the recordings that Mr. Savage had not broken it, and Defendants nonetheless pursued that charge knowing it to be false. *Id.* ¶ 30. The Defendants arrested Plaintiffs Savage and Morse and charged them with various offenses, all of which were later dismissed.[3] *Id.* ¶¶ 27–28, 36–37. Defendants then made statements to the media and online that they knew to be false concerning the March 16, 2024, events. *Id.* ¶¶ 31–34, 41. Among those statements, Defendants claimed Mr. Savage was "combative" leading to a "struggle," broke Defendant Schmidt's ankle, and bit Defendant Fenderson's hand causing lacerations—despite Defendant Fenderson wearing a protective glove that Plaintiffs allege exonerated Mr. Savage of that charge—and that Ms. Morse attempted to assist Mr. Savage in an "escape" and used force against or obstructed officers. *Id.* ¶¶ 33–35, 41; ECF No. 4-1.

Finally, Plaintiffs allege that prior to filing suit, they submitted citizen complaints to the State of Maine, Maine State Police, and Defendant Ross, and that the state exonerated all three Arresting Defendants of wrongdoing; Defendant Schmidt subsequently received an award related to his ankle injury, and Defendants Fenderson and Ritland received promotions. *Id.* ¶ 42.

## PROCEDURAL HISTORY

On September 18, 2025, Plaintiffs filed an initial complaint, ECF No. 1, which they amended on October 22, 2025, ECF No. 4. Plaintiffs assert fifteen causes of action against Defendants as follows:

---

[3] Ms. Morse was charged with obstructing a government administration and refusing to submit to arrest, ECF No. 4 ¶ 28; the state dismissed all charges against her on February 24, 2025, *id.* ¶ 36. Mr. Savage was charged with assault, refusing to submit to arrest, and obstructing government administration, *id.* ¶ 27; the state dismissed all charges against him on April 15, 2025, *id.* ¶ 37.

- Both Plaintiffs assert assault against Defendants Fenderson, Schmidt, and Ritland under the Maine Tort Claims Act ("MTCA"), 14 M.R.S. §§ 8101 and 8111(1)(E) (Count I);

- Mr. Savage asserts battery against Defendants Fenderson and Schmidt under the MTCA (Count II);

- Both Plaintiffs assert intentional infliction of emotional distress against Defendants Fenderson, Schmidt, and Ritland under the MTCA (Count III);

- Both Plaintiffs assert negligent infliction of emotional distress against Defendants Fenderson, Schmidt, and Ritland under 42 U.S.C. §§ 1983 and 1988; the Maine Civil Rights Act ("MCRA"), 5 M.R.S. § 4862; and the MTCA (Count IV);

- Both Plaintiffs assert violations of the MCRA against all Defendants (Count V);

- Both Plaintiffs assert unlawful arrest and malicious prosecution against all Defendants under §§ 1983 and 1988 and the Fourth, Fifth, and Fourteenth Amendments (Count VI);

- Both Plaintiffs assert excessive use of force and reputational harm against all Defendants under §§ 1983 and 1988 and the Fourth, Fifth, and Fourteenth Amendments (Count VII);

- Both Plaintiffs assert violations of Article I, §§ 1, 5, and 19 of the Maine Constitution against all Defendants under the MCRA (Count VIII);

- Both Plaintiffs assert vicarious liability, respondeat superior, and failure to supervise and/or discipline against Defendants Ross and Schmidt under §§ 1983 and 1988 and the MTCA (Count IX);

- Both Plaintiffs assert breach of the special relationship doctrine against all Defendants under §§ 1983 and 1988 and the Fourth, Fifth, and Fourteenth Amendments (Count X);

- Both Plaintiffs assert wrongful arrest against all Defendants under §§ 1983 and 1988 and the MTCA (Count XI);

- Both Plaintiffs assert malicious prosecution against all Defendants under §§ 1983 and 1988 and the MTCA (Count XII);

- Both Plaintiffs assert spoliation of evidence against all Defendants under §§ 1983 and 1988 and the MTCA (Count XIII);

- Both Plaintiffs assert defamation and defamation per se against all Defendants under §§ 1983 and 1988 and the MTCA (Count XIV); and

- Both Plaintiffs assert aiding and abetting against Defendants Schmidt and Ritland under the MTCA (Count XV).

Defendants moved to dismiss the amended complaint for failure to state a claim on January 9, 2026. ECF No. 16. On March 4, 2026, Plaintiffs voluntarily dismissed the State of Maine and Maine State Police from the lawsuit without prejudice. ECF No. 19.

**LEGAL STANDARD**

Rule 12(b)(6) motions to dismiss test the legal sufficiency of a complaint and require courts to determine whether the alleged facts show that plaintiffs have pleaded a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To resolve a

6

Rule 12(b)(6) motion, courts employ a structured, two-step inquiry. *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). The Court need not credit legal or factual allegations that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (quotation modified). Second, the Court takes "the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," and determines whether those facts "plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. If plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible," the Court must dismiss those claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "something more than merely possible or merely consistent with a defendant's liability," *Germanowski v. Harris*, 854 F.3d 68, 71–72 (1st Cir. 2017) (quotation modified), but does not impose a "probability requirement," *Iqbal*, 556 U.S. at 678.

### DISCUSSION

Defendants move to dismiss Plaintiffs' spoliation, defamation, and reputational harm claims. First, Defendants argue Count XIII, spoliation of evidence under 42 U.S.C. § 1983 and the MTCA, fails because spoliation is not an independent cause of action and, even if the Court were to recognize one, Plaintiffs have not pleaded the required elements. ECF No. 16 at 8–10. Next, Defendants move to dismiss Count XIV for defamation under § 1983 and the MTCA, and Counts V, VII, VIII, XI, XII, and XIII in so far as they seek to recover for reputational harm under § 1983 and the MCRA. *Id.* at 10–11. The Court addresses each argument in turn.

### I.   Spoliation Claim

Defendants move to dismiss Count XIII, contending Maine does not recognize a cause of action for spoliation and, even if it did, Plaintiffs fail to allege all the elements of such a claim as it is recognized in other jurisdictions. ECF No. 16 at 8–10. Plaintiffs respond that, while the Law Court has not yet recognized spoliation as an independent cause of action, it would likely do so on these facts to provide relief and deter similar conduct. *See* ECF No. 17 at 4–8. Plaintiffs base their spoliation claim on allegations that Defendants intentionally falsified official reports; manufactured evidence and criminal charges; and destroyed, concealed, or failed to preserve physical evidence to conceal Arresting Defendants' purported use of excessive force. ECF No. 4 at 29–30.

No Maine court, state or federal, has recognized spoliation of evidence as an independent tort. *Grendell v. Maine*, No. 19-cv-00419, 2020 WL 3895765, at *7 (D. Me. July 10, 2020); *Cady v. Cumberland Cnty. Jail*, No. 10-cv-00512, 2013 WL 3967486, at *48 (D. Me. Aug. 1, 2013). As in Maine, "most state courts of last resort have not addressed" whether spoliation is a viable independent cause of action, but "of those that have been asked to recognize the cause, most have declined the invitation." *Koken v. Auburn Mfg., Inc.*, No. CIV. 02-83, 2004 WL 51100, at *3 (D. Me. Jan. 8, 2004) (collecting cases). Even among the few jurisdictions that recognize an independent spoliation tort, courts require a plaintiff to demonstrate, among other things, a "causal relationship between the act of spoliation and the inability of the complainant to prove [their] lawsuit." *Malinowski v. Documented Vehicle/drivers Sys., Inc.*, 66 F. App'x 216, 222 (1st Cir. 2003). This Court has likewise explained that the spoliation doctrine exists "to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to

such loss of evidence." *Driggin v. Am. Sec. Alarm Co.*, 141 F. Supp. 2d 113, 120 (D. Me. 2000) (quotation modified). "This view of the doctrine is not consistent with the existence of an independent cause of action arising out of such deliberate conduct. Rather, the injured party may seek sanctions that will affect [their] claims or defenses." *Gagne v. D.E. Jonsen, Inc.*, 298 F. Supp. 2d 145, 147–48 (D. Me. 2003). Consistent with that purpose, the remedy for spoilation lies in sanctions, including dismissal, exclusion of evidence, or a spoilation-inference jury instruction. *Id.* at 147. It does not form an independent cause of action. *See, e.g.*, *Parlin v. Cumberland Cnty.*, 659 F. Supp. 2d 201, 211 n.10 (D. Me. 2009) (dismissing claim for spoilation of evidence with prejudice because it is "not an independent cause of action in Maine").

Plaintiffs request this Court certify to the Law Court the question of whether to recognize spoilation as an independent cause of action. ECF No. 17 at 8. Certification is discretionary and proper only when: (1) no dispute exists as to the material facts; (2) no clear controlling state precedent exists; and (3) the state court's answer, in at least one alternative, would be determinative of the case. *Darney v. Dragon Prods. Co., LLC*, 2010 ME 39, ¶ 10, 994 A.2d 804. Where the likely course of state law is reasonably clear—as it is here—a federal court may decline certification and instead predict how the state's highest court would decide the issue based on analogous authority and other reliable indicia of state law. *See Int'l Ass'n of Machinists & Aerospace Workers v. Verso Corp.*, 121 F. Supp. 3d 201, 224 (D. Me. 2015). Because Maine recognizes spoilation only as a remedial doctrine, not an independent cause of action, the Court declines certification and **GRANTS** Defendants' motion to dismiss Count XIII with prejudice.

## II.    Defamation and Reputational Harm Claims

Next, Defendants move to dismiss Plaintiffs' defamation and reputational harm claims. ECF No. 16 at 10–11. Specifically, Defendants seek dismissal of: (1) Count XIV for defamation and defamation per se under § 1983 and the MTCA,[4] and (2) Counts V, VII, VIII, XI, XII, and XIII in so far as they seek recovery for reputational harm under § 1983 and the MCRA.[5] *Id.* at 10. Plaintiffs respond that they properly pleaded both defamation and reputational harm. ECF No. 17 at 9–10. They contend the Defendants' press release falsely accused Plaintiffs of various crimes occurring both before and during the arrest and cast Plaintiffs' conduct during the March 16, 2024, interaction in a false and disparaging light. ECF No. 4 at 30–31; *see* ECF No. 4-1 (Maine State Police "Official Release" of information related to Plaintiffs' March 16, 2024, arrest). Plaintiffs also assert they sufficiently allege the false press release caused tangible harm. ECF No. 17 at 9–10.

A government actor's reputational harm is not by itself sufficient to invoke the procedural protections of the Due Process Clause. *Paul v. Davis*, 424 U.S. 693, 701 (1976); *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 10 (1st Cir. 2011). When "stigmatization at the hands of a government actor" results in reputational harm, that harm rises to the level of a protected liberty interest only when paired with a tangible adverse effect. *URI*, 631 F.3d at 9; *see Paul*, 424 U.S. at 701. As the First Circuit has explained, this "stigma plus" test requires the government actor's false speech not just

---

[4] Defendants do not seek to dismiss Count XIV under the MTCA as against Defendants Fenderson, Schmidt, and Ritland. ECF No. 16 at 11 n.2. This presumably leaves the MTCA claim against Defendant Ross within the motion's scope, but a different analysis applies to defamation under the MTCA. Because Defendants did not brief those merits, the Court **DENIES** the motion to the extent it seeks to dismiss Count XIV's defamation claim against Defendant Ross under the MTCA. Accordingly, Plaintiffs' Count XIV defamation claim under the MTCA remains pending against all individually named Defendants.

[5] Because Plaintiffs' claims under 42 U.S.C. § 1983 and the MCRA are coextensive, the Court considers them together. *See Est. of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008); *see also Fortin v. Town of Wells*, No. 09-cv-179, 2010 WL 1935750, at *3 (D. Me. May 11, 2010).

cause reputational harm, but also "adversely impact a right or status previously enjoyed under state law." *Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998); *see Mead v. Independence Ass'n*, 684 F.3d 226, 233 (1st Cir. 2012). Thus, to be sufficient under the stigma plus test, the impacted right or status must emanate from substantive state or federal law. *URI*, 631 F.3d at 10. Furthermore, the adverse effect on that right or status must be directly attributable to the government actor's challenged conduct; if the stigma and plus factors stem from different sources, there is no viable protected liberty interest. *Id.*

Construed generously, Plaintiffs' amended complaint still falls short of a viable stigma plus claim. The stigma is unmistakable: law enforcement's public statements left no doubt that they were accusing Plaintiffs of criminal conduct. The plus, however, remains wanting. And while Plaintiffs' opposition brief supplies additional factual allegations bearing on the plus element, *see* ECF No. 17 at 9–10, the Court cannot consider allegations raised for the first time outside the amended complaint, as it is restricted to "facts and documents that are part of or incorporated into the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).[6] So, although Defendants' allegedly defamatory statements subjected Plaintiffs to "ridicule, hate, scorn and contempt," ECF No. 4 at 30, the amended complaint does not clear the stigma plus

---

[6] Even if the Court could consider the additional factual allegations in Plaintiffs' opposition, those allegations do not cure the deficiency. Plaintiffs state in their opposition that Mr. Savage was self-employed and Ms. Morse worked for a private employer. *See* ECF No. 17 at 9–10. But neither allegation establishes the loss of government employment or another government-conferred right or benefit sufficient to satisfy the plus element of a stigma plus defamation claim. *See Pendleton*, 156 F.3d at 63 (losing private-sector job due to state actor's alleged defamation does not amount to stigma plus because "the alleged defamation and the decision to cashier [the plaintiff] came from two separate, unrelated sources, and the former [could not] plausibly be said to have occurred incident to the latter"); *Mead*, 684 F.3d at 234 (no stigma plus when plaintiff lost job with private employer because it "was not a government benefice"); *Veale v. Keene Publ'g Corp.*, No. 98-1795, 1999 WL 525941, at *1 (1st Cir. May 11, 1999) (per curiam) (unpublished) (no stigma plus where plaintiff was "in business for himself as a landscaper and logger so [he could not] allege that he lost a government job as a result of the alleged defamatory statement").

11

bar necessary to sustain a § 1983 claim. Accordingly, the Court **GRANTS** the motion to dismiss Count XIV for defamation and defamation per se under § 1983 and **DENIES** it as to the MTCA.

Defendants also move to dismiss Counts V, VII, VIII, XI, XII, and XIII,[7] in so far as Plaintiffs seek to recover for reputational harm under § 1983 and the MCRA. ECF No. 16 at 10–11. Because Plaintiffs' pleadings do not consistently distinguish reputational harm as an independent theory of liability from reputational harm as an element of damages, the Court addresses each count in turn.

Count V alleges violations of the MCRA, including harm to Plaintiffs' reputation. ECF No. 4 at 16–17. Insofar as Count V asserts reputational harm as an independent basis for MCRA liability, it fails for the reasons addressed. The Court therefore **DISMISSES** Count V to the extent it asserts an independent claim based solely on reputational harm. However, to the extent Count V identifies reputational harm as an element of damages resulting from an otherwise cognizable MCRA violation, the claim may proceed.

Count VII alleges "excessive use of force and harm to reputation" under § 1983 and the Fourth, Fifth, and Fourteenth Amendments. ECF No. 4 at 19–21. Insofar as Count VII asserts an independent § 1983 claim based solely on reputational harm, it likewise fails. The Court therefore **DISMISSES** the reputational harm portion of Count VII to the extent it is pleaded as a standalone claim.

Count VIII asserts claims under the MCRA for alleged violations of the Maine Constitution, including reputational harm under Article I, § 19. *Id*. at 21–22. Known as the "open courts" provision, Article I, § 19 of the Maine Constitution provides: "Every

---

[7] Because the Court has already dismissed Count XIII, it need not separately address Defendants' arguments concerning that count here.

person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Plaintiffs identify no authority establishing that the Maine Constitution's due process or equal protection guarantees provide a substantive right arising from reputational injury alone. *See Davis v. Theriault*, No. 22-cv-00275, 2023 WL 5628193, at *44 (D. Me. Aug. 31, 2023). Rather, courts construe the "open courts" provision "as providing a procedural right in the event that a plaintiff suffers, among other things, a reputational injury with the remedy being equal and prompt access to fair judicial proceedings." *Id*. (quotation modified). Because Plaintiffs do not allege that Defendants interfered with their access to the courts, Count VIII fails to state a claim based on reputational harm under Article I, § 19 of the Maine Constitution. The Court therefore **DISMSSES** Count VIII to the extent it asserts an independent claim for reputational harm.

Counts XI and XII each mention reputational harm only once, nestled within broader allegations concerning damages. *See* ECF No. 4 at 28–29 (using the word "reputationally" only in reference to the Plaintiffs' being "severely damaged"). At best, those references plead reputational harm as a component of damages, not as an independent basis for liability. Thus, Defendants' motion to dismiss Counts XI and XII is **DENIED**.

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss Plaintiffs' defamation and reputational harm allegations. The Court **GRANTS** the motion as to Count XIV for defamation and defamation per se under § 1983 but **DENIES** the motion as to Plaintiffs' same claims under the MTCA. The Court

13

**GRANTS** the motion to the extent Counts V, VII, and VIII assert independent claims based on reputational harm under either § 1983 or the MCRA. Finally, the Court **DENIES** the motion to dismiss Counts V, XI, and XII insofar as those counts reference reputational harm as an element of damages.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. ECF No. 16. The Court **GRANTS** the motion as to Count XIII and **DISMISSES** it with prejudice. The Court further **GRANTS** the motion as to Count XIV to the extent it asserts claims for defamation and defamation per se under § 1983, and those claims are **DISMISSED** without prejudice; but the Court **DENIES** the motion as to Count XIV insofar as it asserts Plaintiffs' defamation and defamation per se claims under the MTCA.

The Court **GRANTS** the motion as to Counts V, VII, and VIII insofar as those counts assert an independent cause of action for reputational harm under § 1983 and the MCRA, and those claims are **DISMISSED** without prejudice. The Court **DENIES** the motion insofar as Count V, XI, and XII reference reputational harm in conjunction with damages arising from otherwise properly asserted claims.

**SO ORDERED.**

Dated this 11th day of August, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

14