**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JUSTIN SAVAGE and SHAWNA MORSE,<br><br>Plaintiffs,<br>v.<br><br>STATE OF MAINE, MAINE STATE POLICE, COLONEL WILLIAM G. ROSS, TROOPER JAMIE FENDERSON, SERGEANT ADAM SCHMIDT, and DETECTIVE ANNA RITLAND,<br><br>Defendants. | Case No. 2:25-cv-00476-SDN |

**DEFENDANTS JAMIE FENDERSON, ADAM SCHMIDT, AND ANNA DOUGHTY'S**
**PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

In this action, Plaintiffs Justin Savage and Shawna Morse principally allege they suffered constitutional and tortious harm during the course of an arrest executed by Defendants Fenderson, Schmidt, and Doughty ("Arresting Officers"), on March 16, 2024. Setting aside claims previously adjudicated by this Court, the Counts against the Arresting Officers consist of the following:

Count I is a tort claim against all Arresting Officers for "Assault." Compl. ¶¶ 45-50. Count II is a tort claim against all Arresting Officers for "Battery." *Id.* ¶¶ 51-57. Count III is a tort claim against all Arresting Officers for intentional infliction of emotional distress. *Id.* ¶¶ 58-66. Count IV alleges that the Arresting Officers violated the Plaintiffs' civil rights under Maine and federal law by engaging in negligent infliction of emotional distress. *Id.* ¶¶ 67-76. Count V alleges that the Arresting Officers violated Plaintiffs' civil rights under Maine law generally. *Id.* ¶¶ 77-87. Count VI alleges that the Arresting Officers violated Plaintiffs' federal civil rights under § 1983, by placing them under arrest and for charging them with crimes. *Id.* ¶¶ 88-95. Count VII alleges that the Arresting Officers violated Plaintiffs' federal civil rights by using excessive force

during the course of the arrest. *Id.* ¶¶ 96-109. Count VIII alleges that the Arresting Officers violated the Plaintiffs' Maine Constitutional Rights through the use of excessive force during the course of the arrest. *Id.* ¶¶ 110-15. Count IX alleges that Sgt. Schmidt is vicariously liable under § 1983 for any constitutional violations committed by the other two Arresting Officers. *Id.* ¶¶ 116-32. Count X alleges that the Arresting Officers violated the Plaintiffs' federal constitutional rights by breaching the "Special Relationship Doctrine." *Id.* ¶¶ 133-43. Count XI alleges that the Arresting Officers violated the Plaintiffs' federal constitutional rights by arresting them without cause, as well as separately committing the tort of "wrongful arrest" under Maine law. *Id.* ¶¶ 144-48. Count XII alleges that the Arresting Officers violated Plaintiffs' federal constitutional rights by maliciously prosecuting them, and also alleges the same tort under Maine law. *Id.* ¶¶ 149-53. Count XIV alleges that the Arresting Officers committed defamation under Maine law, alongside federal claims that this Court previously dismissed. *Id.* ¶¶ 159-68. Count XV alleges that Defendants Schmidt and Doughty committed the tort of "Aiding and Abetting." *Id.* ¶¶ 169-73.

At this stage in the litigation—where the Arresting Officers are required to assume that all of the factual allegations are true—Plaintiffs have clearly alleged <u>some</u> plausible violations of Maine tort law, as well as violations of their federal and Maine Constitutional rights. The Arresting Officers look forward to addressing and ultimately defeating these allegations at the conclusion of discovery. Those counts include:

- Count I (Assault);
- Count II (Battery);
- Count III (Intentional Infliction of Emotional Distress);
- Count V (violation of the Maine Civil Rights Act);
- Count VII (§ 1983 excessive use of force);

- Count X (§ 1983 breach of the “special relationship doctrine”);
- Count XI (wrongful arrest under § 1983 and Maine tort law); and
- Count XII (false prosecution under § 1983 and Maine tort law).

But several Counts should be set aside now, either because (1) they do not allege plausible causes of action against the Arresting Officers; (2) they have not set forth allegations that establish Article III standing for the claim; (3) the officers are immune from litigation on such claims; and/or (4) the claims are duplicative. In addition to being entitled to judgment as a matter of law, granting judgment to the Arresting Officers on these duplicative or otherwise unrecoverable claims serves judicial economy, saving time and money for all parties, including Plaintiffs and the Court.

Accordingly, Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Fenderson, Schmidt, and Doughty respectfully request that the Court enter judgment on the pleadings in their favor on Counts IV, VI, VIII, IX, XIV, and XV, as detailed below.

**Background and Procedural History**

The factual allegations for this case are set forth in this Court’s Order on Defendants’ Partial Motion to Dismiss (“Order”), which the Arresting Officers adopt and do not dispute for purposes of considering this Rule 12(c) Motion for Judgment on the Pleadings. Order at 2-4 (ECF No. 16). The Order also sets forth the procedural history for this action through August 2026. *Id.* at 4-6. Subsequently, on September 8, 2026, the Arresting Officers filed their respective Answers, generally denying the allegations set forth against them. Answers (ECF Nos. 29-31). On November 2, Defendant Colonel William Ross filed a separate Motion for Judgment on the Pleadings regarding all remaining Counts alleged against him. The Arresting Officers are now engaged in fact discovery with Plaintiffs, *see* Oct. 1, 2026 Order (ECF No. 33), which they do not seek to stay while the Court considers this Rule 12(c) Motion for Judgment on the Pleadings.

## Legal Standards

**I. A Rule 12(c) motion for judgment on the pleadings is reviewed under substantially the same legal standards as motions filed pursuant to Rule 12(b).**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In weighing a Rule 12(c) motion, federal courts apply substantially the same standard to "the pleadings as a whole," that they ordinarily apply to a complaint when considering a motion to dismiss for failure to state a claim: the Court should grant the motion "if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006); *see also Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007) (affirming disposition of constitutional claims on cross-motions for judgment on the pleadings).

When considering motions to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), courts accept as true all well-pleaded facts and draw all reasonable inferences in plaintiffs' favor. *Germanowski v. Harris*, 854 F.3d 68, 69 (1st Cir. 2017). But courts "need not credit a plaintiff's 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Nor is it bound to accept legal conclusions framed as factual allegations. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 10 (1st Cir. 2011); *see also Maldonado v. Fontanes*, 568 F.3d 263, 266, 268 (1st Cir. 2009). After discarding conclusory allegations, courts determine whether the remaining allegations state a claim for relief that is plausible on its face, allowing them to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Germanowski*, 854 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), courts also take the well-pleaded facts as true and disregard "unsupported conclusions or interpretations of law."

*Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993)). However, if jurisdictional facts are challenged, courts "must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

## II. Article III requires Plaintiffs to allege specific facts establishing independent standing to sue each of the Arresting Officers for every Count asserted.

To invoke federal jurisdiction, plaintiffs must plead facts establishing Article III standing. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). In any action, plaintiffs "must 'demonstrate standing separately for each form of relief sought.'" *Nat'l Ass'n of Gov't Emps., Inc. v. Yellen*, 120 F.4th 904, 911 (1st Cir. 2024). Establishing standing requires pleading factual allegations that fulfill "each part of a familiar triad: injury, causation, and redressability." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012); *see also Lyman*, 954 F.3d at 360 ("The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability."). Parties invoking federal jurisdiction bear the burden of establishing standing "at each stage of the litigation." *Taker v. Blanche*, 179 F.4th 96, 101 (1st Cir. 2026).

First, an injury-in-fact requires invasion of a legally protected interest. *See Lyman*, 954 F.3d at 360. Second, plaintiffs must establish "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43(1976)). When plaintiffs fail to establish all three elements on any claim asserted, courts are obligated to dismiss deficient claims for lack of subject matter jurisdiction. *See Plazzi v. FedEx Ground Package Sys., Inc.*, 52 F.4th 1, 4 (1st Cir. 2022).

### III. Qualified immunity protects the discretionary actions of government officials unless plaintiffs plausibly allege a violation of clearly established law.

"Public officials have 'qualified immunity' from personal liability for actions taken while performing discretionary functions." *Barton v. Clancy*, 632 F.3d 9, 21 (1st Cir. 2011) (quoting *Lynch v. City of Boston*, 180 F.3d 1, 13 (1st Cir. 1999)). "Qualified immunity is designed to confer protection from the travails of suit as well as from the imposition of damages" and should be evaluated "at the earliest practicable stage of litigation." *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014). A qualified immunity analysis consists of two prongs: 1) whether the facts alleged or established "make out violation of a constitutional right;" and 2) whether the right was "clearly established at the time of the alleged violation." *Barton*, 632 F.3d at 21-22; *MacDonald*, 745 F.3d at 12. To determine that the violation was clearly established, the Court must examine both the clarity of the law at the time of the alleged violation and whether a reasonable defendant would have understood that his or her conduct was unconstitutional. *Barton*, 632 F.3d at 22. This "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Maldonado*, 568 F.3d at 269 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)); *see also Walden v. City of Providence, R.I.*, 596 F.3d 38, 53 (1st Cir. 2010). The Supreme Court has left it to the "sound discretion" of district court judges "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity "sweeps so broadly that 'all but the plainly incompetent or those who knowingly violate the law' are protected from civil rights suits for money damages." *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1373 (1st Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Thus, "government officials" are given "breathing room to make reasonable but mistaken judgments about open legal questions." *MacDonald*, 745 F.3d at 11 (1st Cir. 2014) (quoting

*Ashcroft v. Kidd*, 563 U.S. 731, 743 (2011)). The protection applies "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Ultimately, the "burden of demonstrating" an official's actions violated clearly established law rests with the plaintiff. *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015); *see also Davis v. Scherer*, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.").

A right is clearly established when it is either "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Irish v. Fowler*, 979 F.3d 65, 76 (1st Cir. 2020). In other words, a right is clearly established only when "every reasonable official would have understood that what he is doing violates that right." *Cintron v. Bibeault*, 148 F.4th 37, 51 (1st Cir. 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). And although plaintiffs need not point to caselaw with perfectly analogous facts, "clearly established law should not be defined at a high level of generality." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). Caselaw presented by a plaintiff must "be stated with particularity," to the underlying facts, because allowing otherwise "threatens to 'convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Souza v. Pina*, 53 F.3d 423, 425 (1st Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *see also Limone v. Condon*, 372 F.3d 39, 46 (1st Cir. 2004) ("Courts must be careful not to permit an artful pleader to convert the doctrine of qualified immunity into a hollow safeguard simply by alleging a violation of an exceedingly nebulous right.").

Maine law applies this same qualified immunity standard to claims brought pursuant to the Maine Civil Rights Act. *See, e.g.*, *Clifford v. MaineGeneral Med. Ctr.*, 91 A.3d 567, 583 (Me. 2014) (applying federal common law of qualified immunity to Maine Civil Rights Act claims); *Richard v. Town of Eliot*, 780 A.2d 281, 290 (Me. 2001); *see also Cady v. Walsh*, 753 F.3d 348, 356 n.6 (1st Cir. 2014) (noting that the Maine and federal civil rights violations are "analyzed co-extensively.").

**IV. Maine law provides immunity to government officials for personal tort claims.**

The Maine Tort Claims Act also confers immunity on state officials sued in their personal capacity for on-the-job discretionary actions and omissions. 14 M.R.S. § 8111. But unlike the immunity in civil rights cases, this statutory immunity is absolute.

Maine's absolute statutory immunity for tort claims covers "[p]erforming or failing to perform a discretionary function or duty, whether or not the discretion is abused and whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid," *id.* § 8111(1)(C), as well as "[p]erforming or failing to perform any prosecutorial function involving civil, criminal, or administrative enforcement." *Id.* § 8111(1)(D). Moreover, the Maine Legislature has underscored that discretionary function immunity described in 14 M.R.S. § 8111(1)(C) "shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees . . . who are required to exercise judgment or discretion in performing their official duties." *Id.* § 8111(1). Employees may also claim statutory immunity on tort claims for any "intentional act or omission

within the course and scope of employment; provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith." *Id.* § 8111(1)(E).

## Argument

**I. Because neither § 1983, the Maine Civil Rights Act, nor the Maine Tort Claims Act provide a cause of action that allows recovery for negligent infliction of emotional distress, the Court should dismiss Count IV.**

In Count IV, Plaintiffs assert a claim for negligent infliction of emotional distress ("NIED"), pursuant to § 1983, the Maine Civil Rights Act, and the Maine Tort Claims Act. Because none of these statutes provide a cause of action that allows recovery for NIED, as set forth below respectively, the Court should dismiss Count IV in its entirety.

A. Section 1983 does not provide a cause of action to recover for NIED.

Binding First Circuit precedent explains that actions brought pursuant to § 1983 are analyzed through a "purely constitutional rather than a blended constitutional/common law approach." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013). Said another way, courts in the First Circuit apply the "familiar principle that the constitutional tort authorized by § 1983 'stands on its own, influenced by the substance, but not tied to the formal categories and procedures, of the common law.'" *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 277 n.1 (1994) (Ginsburg, J., concurring)). This means that plaintiffs pursuing recovery under § 1983 must point to a "violation of rights locatable in constitutional text," rather than the common law of torts. *Castellano v. Fragozo*, 352 F.3d 939, 953-54 (5th Cir. 2003); *see also Hernandez-Cuevas*, 723 F.3d at 101 (citing approvingly to *Castellano*'s caution against the "impermissible blending of state tort law and constitutional law").

Count IV asserts no constitutional violation. To the extent that a constitutional violation could be implicitly gleaned from Count IV's allegations, any such claim would be duplicative of

the § 1983 claims brought pursuant to Counts VI, VII, and X.[1] This provides a second basis for its dismissal. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 236 (1st Cir. 2013).

Finally, Plaintiffs cannot point to any case law that clearly establishes that engaging in NIED activity—on its own—violates the United States Constitution. As the Supreme Court has explained, "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Seven years after *Baker*, the Supreme Court noted that if a "government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is constitutionally required.'" *Daniels v. Williams*, 474 U.S. 327, 333 (1986) (emphasis in original) (quoting *Parratt v. Taylor*, 451 U.S. 527, 544 (1981)); *see also Germany v. Vance*, 868 F.2d 9, 17 (1st Cir. 1989) ("such negligent conduct is not actionable under section 1983").

Given the caselaw, no reasonable official—much less "every reasonable official—could be on notice that NIED is actionable under § 1983. *See Mullenix*, 577 U.S. at 110. The Arresting Officers would therefore be entitled to qualified immunity on Count IV, even if the Court were to conclude that the common law tort of NIED inherently amounts to a violation of the Constitution.

B. The Maine Civil Rights Act does not provide a cause of action to recover for NIED.

The Maine Civil Rights Act creates a private cause of action for individuals "whose exercise or enjoyment of the rights secured by the United States Constitution or the laws of the United States or of the rights secured by the Constitution of Maine or the laws of the State has been interfered with, or attempted to be interfered with." 5 M.R.S. § 4682 (1-A). However, it

[1] *See* Part IV, *infra*.

only allows for recovery "whenever any person . . . [i]ntentionally interferes or attempts to intentionally interfere with the exercise or enjoyment" of those rights. *Id.* § 4682 (1-A) (B).

Under Maine law, the tort of NIED requires "proof that the defendant owed the plaintiff a duty and caused the plaintiff damage by breaching that duty." *Nadeau v. Nadeau*, 359 A.3d 691, 700 (Me. 2026). The key word is "negligent." Because "[a]lthough any person may be liable for the infliction of severe emotional distress if the conduct causing the harm is sufficiently outrageous and is intentional or reckless, the universe of those who may be liable in tort for the negligent infliction of emotional distress is much more limited." *Curtis v. Porter*, 784 A.2d 18, 25 (Me. 2001). Recovery for NIED therefore definitionally contrasts with the Maine Civil Rights Act's requirement that recovery is only available for intentional acts. 5 M.R.S. § 4682 (1-A) (B). Accordingly, Count IV does not state a valid claim for relief under the Maine Civil Rights Act.

Moreover, any Maine Civil Rights Act claim asserted under Count IV would be duplicative of the general claims for violation of that statute that Plaintiffs assert in Count V—and which the Arresting Officers are not seeking judgment before the close of discovery. Finally, because Maine law applies the same qualified immunity standard as federal courts analyzing actions brought pursuant to § 1983, the Arresting Officers would be immune from any NIED claims under the Maine Civil Rights Act, even if such claims could be validly asserted.

C. The Arresting Officers are immune from any NIED common law tort claims.

For similar reasons to why the Arresting Officers are entitled to assert qualified immunity on any potential NIED civil rights claims, they are likewise entitled to Maine's statutory discretionary function immunity for "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused." 14 M.R.S. § 8111(C). They are separately entitled to absolute immunity for any aspect of Count IV asserting torts committed for

"[p]erforming or failing to perform any prosecutorial function involving civil, criminal or administrative enforcement." *Id.* § 8111(D).

And the Arresting Officers' clearest statutory immunity for Count IV's NIED tort claim is provided for "[a]ny intentional act or omission within the course and scope of employment; provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith." *Id.* § 8111(E). Given the standard for NIED claims discussed above, any negligent infliction of emotional distress definitionally cannot be committed in "bad faith." The immunity provided by § 8111(E) may not cover certain intentional torts, but its protection for employees sued for NIED is absolute.

## II. Because respondeat superior liability cannot form the basis for relief in federal civil rights litigation, Seargent Schmidt is entitled to judgment on Count IX.

### A. Respondeat superior liability cannot form the basis for relief in civil rights litigation.

Plaintiffs cannot prevail on Count IX asserted against Sgt. Schmidt pursuant to § 1983 or the Maine Civil Rights Act. Binding case law provides that merely holding a supervisory role cannot form the basis for civil rights damages. To maintain a civil rights claim under § 1983 or the Maine Civil Rights Act, a plaintiff must allege: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."[2] *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999). And to the extent plaintiffs assert a § 1983 claim against an individual defendant, their allegations must support a finding that the defendant, through his or her individual actions, violated the plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 676; *see also Velez-Rivera v.*

---

[2] The Maine Civil Rights Act also reaches violations of the Maine Constitution and Maine law, but Section 1983 and Maine Civil Rights Act claims are "analyzed co-extensively." *Cady*, 753 F.3d at 356 n.6; *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007) ("The disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA.").

*Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) ("It is well-established that only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.").

This personal involvement element requires plaintiffs to show a causal connection between the specific defendant's acts and the alleged constitutional rights deprivation. *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 902 (1st Cir. 1988)). That showing may consist of direct acts by the defendant, certain acts performed at the defendant's direction, or the defendant's knowledge of and consent to alleged acts. *Ramírez-De León,* 345 F. Supp. 2d at 184. In other words, a defendant "may not be held liable under a theory of respondeat superior; rather, a plaintiff must show that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Arocho-Rodriguez v. Concepcion*, 177 F.4th 39, 44 (1st Cir. 2026) (quoting *Iqbal*, 556 U.S. at 676); *see also Richards v. Town of Eliot*, 780 A.2d 281, 294 (Me. 2001) ("Respondeat superior or vicarious liability will not attach under § 1983."). Accordingly Sgt. Schmidt is entitled to judgment on the pleadings on Count IX.[3]

B. <u>Sergeant Schmidt is entitled to qualified immunity on Count IX</u>.

Part II. A. above explains why Count IX fails to allege a plausible respondeat superior civil rights violation against Sgt. Schmidt. But even if this Court were unconvinced, Plaintiffs nevertheless cannot meet their heavy burden to demonstrate that Sgt. Schmidt's purported actions violated "clearly established" Fourth Amendment law.

The Supreme Court has "repeatedly" cautioned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)

[3] Unlike Colonel Ross, Plaintiffs have alleged that Sgt. Schmidt was personally involved in the purported violation of their constitutional rights, where discovery is ongoing. Nevertheless, for the reasons discussed throughout Part II, their respondeat superior theory of liability stated in Count IX against Sgt. Schmidt cannot prevail.

(quoting *San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)). And the Law Court has likewise applied that principle to Maine civil rights actions for decades. *See, e.g.*, *Creamer v. Sceviour*, 652 A.2d 110, 113 (Me. 1995) (underscoring that a mere "general declaration of the legal right allegedly violated" is not sufficient) (quoting *Maguire v. Old Orchard Beach*, 783 F. Supp. 1475, 1480 (D. Me. 1992)). Although the Supreme Court does not demand "a case directly on point for a right to be clearly established," a plaintiff seeking to overcome qualified immunity must point to a decision that places the constitutional validity of an official's actions "beyond debate." *Kisela*, 584 U.S. at 104 (quoting *White*, 580 U.S. at 79); *see also Creamer*, 652 A.2d at 113.

Here, the weight of First Circuit caselaw points in the opposite direction. *See, e.g.*, *Parker v. Landry*, 935 F.3d 9, 15 (1st Cir. 2019); *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016); *Saldivar*, 818 F.3d 14, 18-19 (1st Cir. 2016); *Maldonado*, 23 F.3d at 581-82. Accordingly, even if Plaintiffs had asserted a plausible constitutional violation against Sgt. Schmidt under Count IX—which they have not—he would nevertheless be entitled to qualified immunity.

## III. The Arresting Officers are entitled to judgment on Count XIV.

Count XIV consists of a defamation claim alleged pursuant to the Maine Tort Claims Act. First and foremost, the Amended Complaint lacks sufficient allegations to establish that it was the Arresting Officers who committed the alleged defamation, which is sufficient for the Court to grant the Arresting Officers judgment for failure to plead any plausible claim for relief.

Moreover, there are not sufficient plausible allegations to fulfill Article III's "causation" requirement to establish standing on Count IX. The Amended Complaint lacks the necessary allegations, as it relates to defamation, to establish "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. Because there are not sufficient allegations to demonstrate that the purportedly defamatory statements were made by the Arresting Officers,

"and not the result of the independent action of some third party," *id.*, Count IX fails for this reason as well.

But even if Plaintiffs had asserted a plausible defamation claim, the Arresting Officers are nevertheless entitled to absolute statutory immunity under Maine law. The Maine Tort Claims Act confers absolute immunity when a government actor is "[p]erforming or failing to perform a discretionary function or duty, whether or not the discretion is abused and whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid." *Id.* § 8111(1)(C). Moreover, the Maine Legislature has underscored that this immunity "shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees . . . who are required to exercise judgment or discretion in performing their official duties." *Id.* § 8111(1).

Statements by officials regarding public safety, law enforcement activity, and policing are all clearly covered by the absolute immunity conveyed by the Maine Tort Claims Act. *See, e.g.*, *Davis v. Theriault*, No. 1:22-CV-00275-JDL, 2023 WL 5628193, at *38-39 (D. Me. Aug. 31, 2023) (applying Maine Tort Claims Act's discretionary function immunity to defamation claims). Accordingly, the Arresting Officers are entitled to judgment on Count IX.

**IV. Because they are entirely duplicative of other live claims, the Arresting Officers are entitled to judgment on Counts VI, VIII, and XV.**

If a plaintiff attempts to assert a claim for relief that is not distinct from another asserted claim, such attempts are "subject to dismissal as a duplicative claim." *Young*, 717 F.3d at 236. That is because "[p]leading an additional cause of action provides [plaintiffs] with no further remedy" from those already sought. *Id.* Claims brought pursuant to § 1983 are no exception. *See*

*id.* at 237 ("holding because § 1985 claim 'merely duplicates part of [plaintiffs'] claim under § 1983,' dismissal of former claim was 'appropriate because the claim is unnecessary,'" (quoting *Ferran v. Town of Nassau*, 11 F.3d 21, 23 (2d Cir. 1993)).

Under state law, Maine applies the same rule as federal courts when parties assert duplicative substantive claims for relief. *See, e.g.*, *Hogan v. Kennebec Valley Comm. College*, 353 A.3d 932, 933 (Me. 2026) ("When the determination is being made whether an independent claim is duplicative and subject to the exclusivity rule, it is incumbent upon the claimant, when presented with a motion to dismiss, to clarify the scope of the claim and to explain why the claim is not duplicative."); *Kane v. Comm'r of D.H.H.S.*, 960 A.2d 1196, 1205 (Me. 2008) ("the court did not abuse its discretion in dismissing [plaintiff's] independent claims as duplicative").

A. <u>Count VIII is duplicative of Count V.</u>

The Arresting Officers have not sought dismissal or judgment on Count V of the Amended Complaint, which asserts a general violation of the Maine Civil Rights Act. Am. Compl. ¶¶ 77-87. In Count VIII, Plaintiffs attempt to state a claim pursuant to 5 M.R.S. § 4682 (the Maine Civil Rights Act) for violations of the Maine Constitution. *Id.* ¶¶ 110-115. Because the Maine Civil Rights Act's substance provides for a cause of action where an individual's "rights secured by the United States Constitution or the laws of the United States <u>or of the rights secured by the Constitution of Maine</u> or the laws of the State" have been violated, Count V and Count VIII are identical. 5 M.R.S. § 4682 (emphasis added). Accordingly, the Court should grant judgment to the Arresting Officers on Count VIII.

B. <u>Count VI is duplicative of the § 1983 claims stated in Counts XI and XII.</u>

The Arresting Officers have not sought dismissal or pre-discovery judgment on Counts XI or XII of the Amended Complaint, which assert Maine tort claims for "wrongful arrest" and

"malicious prosecution," respectively, as well as stating claims for violating their constitutional rights under § 1983. *Id.* ¶¶ 144-153. Meanwhile, Count VI states a claim for "unlawful arrest and malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution." *Id.* ¶¶ 88-95. In other words, Count VI's civil rights claims are entirely re-asserted under Counts XI and XII. Because Count VI is duplicative of these later claims, the Arresting Officers are entitled to judgment.[4]

C. Because Maine views "aiding and abetting" as a theory of liability, rather than a substantive tort, Count XV is duplicative of all Maine tort claims against the Arresting Officers.

Under Maine law, "aiding and abetting" is a theory of liability for the commission of a substantive tort; it is not a substantive tort, itself. *See Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 250 A.3d 122, 126-29 (Me. 2021). Thus, an individual may be held liable under Maine tort law (1) if they personally commissioned the underlying tort; or (2) under "aiding and abetting liability" if an individual has actual knowledge and provides substantial assistance to the tortfeasor in its commission. *Id.* at 129. But there is no substantive cause of action for "aiding and abetting," if there is no underlying tort. *See id.* ("The next questions are whether there is anything distinct about the tort of a breach of fiduciary duty to reject imposing an aiding and abetting theory of liability as to that particular tort.") (emphasis added).

If Plaintiffs are able to prove that they suffered substantive damages under any of their Maine tort claims, they *may* be able to recover damages from an "aider and abettor," (assuming they meet the Law Court's heightened standard of liability), just as they are permitted to recover

[4] Because Counts XI and XII assert Maine tort claims where the Arresting Officers have not sought dismissal or judgment, the Arresting Officers are seeking judgment on Count VI, which would appear to better serve judicial economy, rather than seeking judgment only on the § 1983 portion of Counts XI and XII. However, if the Court finds the latter preferable for purposes of organizing which Counts remain in the litigation, the Arresting Officers do not oppose this alternative route of dismissing the duplicative false arrest and malicious prosecution claims.

from the tortfeasor directly. Count XV is thus unnecessary and duplicative, entitling the Arresting Officers to judgment on the pleadings.

**CONCLUSION**

The Arresting Officers do not seek to avoid or delay discovery on claims that cannot be decided under Rule 12. However, the Federal Rules of Civil Procedure and binding First Circuit caselaw warrant judgment on the pleadings for claims on which Plaintiffs could never prevail as a matter of law, as well as those claims that are duplicative. Accordingly, the Arresting Officers respectfully request the Court enter judgment on the pleadings in their favor on Counts IV, VI, VIII, IX, XIV, and XV.

DATED: November 22, 2026

Respectfully submitted,

AARON M. FREY
Attorney General

*/s/ Paul E. Suitter*

Paul E. Suitter
Assistant Attorney General
paul.suitter@maine.gov
6 State House Station
Augusta, Maine 04333-0006
Tel. (207) 626-8800

*Counsel for Defendants*